* * * * * * * * * * *
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stanback and the briefs before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. The Full Commission affirms with some modifications the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * * RULING ON EVIDENTIARY MATTERS
Defendant argues in their brief that, at hearing, the Deputy Commissioner made a decision on plaintiff's credibility prior to hearing the testimony of defense and other witnesses. At the March 25, 2004 hearing, the Deputy Commissioner commented to the then — pro se plaintiff,
 The reason — so you'll understand the reason I'm sustaining these objections is because these questions are irrelevant as to whether you actually did sustain an injury, and having witnessed your demeanor today during the hearing, I'm not questioning your credibility on the issue. It's going to be a matter of whether your claim is time barred pursuant to Section 97-22, and it's going to be a question of whether your condition is causally related to what you have claimed happened.
While it may have been inappropriate for the Deputy Commissioner to comment on plaintiff's credibility, it appears that the Deputy Commissioner was trying to help a pro se plaintiff understand evidentiary rules and hearing procedures. Additionally, the Full Commission conducts a de novo review of the evidence and is the ultimate finder of fact and judge of credibility of the witnesses. Adams v. AVX Corporation, 349 N.C. 676,509 S.E.2d 411 (1998). Thus, the Full Commission will make a determination as to the credibility of the parties and render pertinent findings of fact without relying on the Deputy Commissioner's determination. Defendant's objection to the comments of the Deputy Commissioner is overruled.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matter of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. Plaintiff and defendant were subject to and bound by the provisions of the North Carolina Workers' Compensation Act on May 13, 2002.
2. An employer-employee relationship existed between the plaintiff and defendant on May 13, 2002.
3. Defendant is self-insured, with Key Risk Management Services, Inc., as the third-party administrator.
4. Plaintiff alleges that she sustained an injury to her right foot/ankle on May 13, 2002.
5. Defendant alleges that plaintiff's claim is time barred pursuant to N.C. Gen. Stat. § 97-22. Defendant denied that plaintiff's current problems are causally related to the alleged May 13, 2002 injury and cannot verify that plaintiff suffered an injury on that date.
6. Plaintiff's average weekly wage is $1,153.40, yielding a compensation rate of $654.00 per week.
7. Plaintiff has not missed the statutory amount of days required to invoke indemnity benefits pursuant to the Workers' Compensation Act.
8. Plaintiff first received medical treatment for her alleged injury on June 28, 2002.
9. Plaintiff filed her Industrial Commission Form 18 on March 24, 2003.
10. The following documents were stipulated into evidence at the Deputy Commissioner's hearing: Stipulated Exhibit #1 — Industrial Commission forms; plaintiff's medical records.
 * * * * * * * * * * *
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the Deputy Commissioner's hearing, plaintiff was 54 years old. She has a bachelor's degree in psychology and a master's degree in education, with a focus on counseling, and is a certified school counselor.
2. Plaintiff's work history includes employment by the State of Florida providing vocational rehabilitation to high school students with disabilities. She also worked as the director of Specialized Services for Adults, which involved working with persons with mental disabilities. Defendant employed plaintiff beginning in 1990, when she worked for one year as an in-school suspension coordinator. She then began working full-time as a school counselor, beginning as a counselor at Carroll Middle School in Wake County for three years. Plaintiff was then transferred to Wake Forest/Rolesville Middle School where she also worked as a counselor. Plaintiff was a head counselor for the last seven years of her employment at Wake Forest/Rolesville Middle School.
3. On May 13, 2002, students were engaged in end of grade testing and plaintiff was assigned to coordinate all the testing. All students and teachers were assigned to remain in their testing locations throughout the test period and hall monitors were assigned to the school's hallways. Plaintiff and other administrators administered the exams.
4. While coordinating the testing on May 13, 2002, plaintiff was called into a stairway area to meet with one of the exam proctors to discuss a problem. Plaintiff was on the first floor and the proctor was on the second floor. Plaintiff went up the stairs a couple of steps where she stopped and spoke to the proctor. She then turned to go down the stairs. After turning to go down the stairs, the proctor spoke to her again. Plaintiff turned again to speak to the proctor. As she turned, she stepped with her right foot onto a floor mat. The corner of the floor mat was folded over the rest of the mat. When plaintiff stepped onto the upturned mat, it caused her right foot to roll and her right ankle to strike the concrete floor.
5. Plaintiff continued to work through the end of grade testing period. She told co-workers Tanya Blake and Hilda Boyd that she injured her ankle in the stairway. Ms. Blake and Ms. Boyd corroborated plaintiff's testimony regarding her injury and the fact that she walked with a limp following the incident. Plaintiff did not walk with a limp prior to the incident on May 13, 2002.
6. Plaintiff did not immediately report her injury to defendant because she believed that she had merely sustained a sprained ankle. Likewise, she did not seek immediate medical treatment because she did not believe her injury was significant and, due to the busy end of grade test schedule, she was working from 6:00 a.m. until evening when the custodians locked the building.
7. Later, plaintiff spoke to one of the school's custodians who informed her that she should report her injury to defendant. The custodian also told plaintiff to report the injury to Ashley Hastings (Blackwell), the workers' compensation specialist for defendant. Plaintiff was familiar with a notice posted in the teacher's lounge that stated that injuries on the job must be reported within 24 hours. In addition, plaintiff had referred to her employee's handbook, which also stated that defendant required employees to report work-related injuries within 24 hours. On May 28, 2002, plaintiff telephoned Ms. Hastings and asked her if it was too late to fill out an accident report form. Ms. Hastings informed plaintiff that it was too late to file a claim for her injury.
8. After plaintiff telephoned Ms. Hastings on May 28, 2002, she was approached by Marvin Connelly, principal. Plaintiff felt Mr. Connelly was upset with her and that he wanted to know why she had called Ms. Hastings about her injury rather than first reporting her injury to him. Mr. Connelly was unaware of plaintiff's claim until Ms. Hastings informed him of it. At the Deputy Commissioner's hearing, Mr. Connelly testified that he first became aware of plaintiff's claim in March 2003 when Ms. Hastings contacted him. Mr. Connelly stated that the procedures for reporting a work injury are in the faculty handbook, the Wake County Public Schools' handbook, and that faculty meetings are held at the beginning of the school year to discuss policies. Due to plaintiff's perception of Mr. Connelly's reaction as negative and her belief that her injury was not severe, plaintiff decided that she would not pursue a workers' compensation claim at that time.
9. At the hearing before the Deputy Commissioner, Ms. Hastings testified that she did not recall any conversation with plaintiff prior to March 24, 2003, when she received plaintiff's Form 18. She also stated that defendant's policy is that employees must notify defendant within seven days of an injury. Ms. Hastings specifically denied any conversation with plaintiff on May 28, 2002 where she allegedly told plaintiff it was too late to file her claim, and also denied contacting Mr. Connelly in May 2002 to inform him of plaintiff's claim.
10. On June 28, 2002, after the end of the school year, plaintiff presented to Dr. Kirk Woelffer at The Raleigh Foot Center. Plaintiff complained chiefly of right ankle pain and daytime swelling since she injured her ankle. Dr. Woelffer prescribed a compression wrap and regular icing and also discussed custom orthotics and the need for appropriate footwear. Dr. Woelffer did not recommend surgery or restrict plaintiff from work. Plaintiff adhered to Dr. Woelffer's treatment plan; however, her ankle condition did not improve.
11. On September 26, 2002, plaintiff sought treatment from Dr. James Judge, podiatric surgeon at Wake Foot and Ankle Center. Dr. Judge initially believed that plaintiff may have sustained a foot or ankle fracture but based on an MRI, determined that her injury involved only the soft tissue structures of her foot and ankle. Dr. Judge diagnosed plaintiff with severe pes plano valgus and severe posterior tibial dysfunction of the right foot. Dr. Judge treated plaintiff conservatively with a variety of braces and shoe inserts. Dr. Judge never restricted plaintiff from working and has not recommended surgery for treatment of plaintiff's foot and ankle injury. Dr. Judge testified that based on plaintiff's history and clinical findings, her injury on May 13, 2002 began the series of events that led to her current condition. Dr. Judge also gave plaintiff a 40% impairment rating to her right foot and ankle, and stated that if she underwent plantalar arthrodesis, she would have a 60% impairment rating.
12. In February 2003, plaintiff visited with her sister who is a chiropractor. Plaintiff's sister provided her with chiropractic treatment for her right foot and ankle. Plaintiff's sister also informed her that it was not too late to file a workers' compensation claim. Based on her sister's advice, plaintiff filed an Industrial Commission Form 18 on March 24, 2003.
13. Judy Lester, claims representative for Key Risk Management Services, telephoned plaintiff and took her recorded statement. Ms. Lester then filed an Industrial Commission Form 61 denying liability for plaintiff's claim. The reasons stated for the denial of plaintiff's claim did not include the time limitation in N.C. Gen. Stat. § 97-22. Although plaintiff requested a copy of her recorded statement, Ms. Lester did not or was unable to provide plaintiff with a copy.
14. On October 29, 2003, plaintiff saw Dr. Shawn Phelan, chiropractor, upon referral from Dr. Judge. Plaintiff's right foot was red and inflamed and Dr. Phelan performed mobilization and manipulation of plaintiff's right ankle and bone joints. Dr. Phelan performed 21 treatments on plaintiff's right foot between October 29, 2003 and June 25, 2004, and plaintiff experienced less pain after treatment. At the time of his deposition, Dr. Phelan continued to treat plaintiff every 10-14 days. Dr. Phelan testified that plaintiff's injury on May 13, 2002 has a direct relationship to the conditions for which he has treated her. Dr. Phelan did not disagree with the 40% impairment rating given plaintiff by Dr. Judge.
15. The Full Commission finds that plaintiff's injury by accident on May 13, 2002 caused or significantly contributed to degeneration and rotational problems due to collapse of the subtalar joint, fixed valgus positioning of the right foot on the leg, posterior tibial tendon dysfunction, pes plano valgus foot structure, ankylosis of the subtalar and midtarsal joint and resultant ankle limitation and arthroses.
16. As a result of her injury by accident on May 13, 2002, plaintiff has a 40% permanent impairment of her right foot. There is a substantial risk that plaintiff's foot will require future podiatric and chiropractic treatment. The necessary podiatric treatment may include surgical fusion of the right foot and ankle joints.
17. Prior to March 24, 2003, plaintiff did not reasonably know the nature and extent of her injury. Her injury did not disable her from work and did not require surgery.
18. The Full Commission finds plaintiff's testimony credible regarding the cause of her injury and the events occurring after her injury, including her May 28, 2002 conversation with Ms. Hastings. Because plaintiff notified defendant of the injury during her conversation with Ms. Hastings on May 28, 2002, defendant received actual notice of plaintiff's injury within two weeks of its occurrence.
19. Defendant was not prejudiced by the delay in receiving written notice of plaintiff's injury and there is no evidence that the delay prevented defendant from investigating plaintiff's injury. Additionally, the greater weight of the evidence fails to establish that the condition of plaintiff's foot and ankle was worsened by any delay in plaintiff's receipt of medical treatment.
20. The treatment provided to plaintiff by Drs. Woelffer, Judge and Phelan was reasonably necessary to effect a cure, provide relief or lessen plaintiff's period of disability.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On May 13, 2002, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant, resulting in injuries to her right foot. N.C. Gen. Stat. § 97-2(6).
2. As a result of her injury by accident of May 13, 2002, plaintiff sustained a 40% permanent functional impairment of her right foot for which she is entitled to permanent partial disability compensation at the rate of $654.00 per week for 57.6 weeks. N.C. Gen. Stat. § 97-31(14).
3. Plaintiff is entitled to payment of all medical expenses incurred as a result of her injury by accident of May 13, 2002, including future medical expenses. N.C. Gen. Stat. §§ 97-25;97-25.1.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay to plaintiff permanent partial disability compensation at the rate of $654.00 per week for 57.6 weeks. This amount shall be paid in a lump sum, subject to the attorney's fee approved in paragraph 3 of this Award.
2. Defendant shall pay all medical expenses incurred by plaintiff as a result of her May 13, 2003 injury by accident, including future medical treatment.
3. A reasonable attorney's fee of 25% of the compensation due plaintiff in paragraph 1 of this Award is approved for plaintiff's counsel and shall be deducted from said compensation and paid directly to plaintiff's counsel.
4. Defendant shall pay the costs, including expert witness fees to Dr. Shawn Phelan in the amount of $160.00 and to Dr. James Judge in the amount of $230.00.
This 24 day of March 2006.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/_____________ THOMAS J. BOLCH COMMISSIONER